UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOUGLAS CORNELL JACKSON,

Plaintiff,

v.

TERRY WILKINS et al.,

Defendants.

Case No. 2:26-cv-59

Honorable Robert J. Jonker

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff filed an application to proceed *in forma pauperis* (ECF No. 2); however, Plaintiff is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).

Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, and Plaintiff has not demonstrated that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this action. Further, Plaintiff has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis.*[1] Accordingly, for the reasons set forth below, this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

[1] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $55.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. The miscellaneous administrative fee, however, "does not apply to applications for a writ of habeas

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule

---

corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the Michigan federal courts. In at least three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Jackson v. Berean*, No. 1:18-cv-1075 (W.D. Mich. Mar. 19, 2019); *Jackson v. Bouchard*, No. 2:16-cv-246 (W.D. Mich. Dec. 21, 2016); *Jackson v. Evans*, No. 2:11-cv-13524 (E.D. Mich. Aug. 31, 2011). In addition, the Court has previously denied Plaintiff leave to proceed *in forma pauperis* under the three-strikes rule on several occasions. *See Jackson v. Lorendo*, No. 2:25-cv-184 (W.D. Mich. Oct. 24, 2025); *Jackson v. Simon*, No. 1:22-cv-44 (W.D. Mich. Jun. 27, 2022); *Jackson v. Novak*, No. 1:21-cv-1030 (W.D. Mich. Jan. 11, 2022); *Jackson v. Hoffman*, No. 2:21-cv-175 (W.D. Mich. Sept. 2, 2021); *Jackson v. Miller*, No. 2:21-cv-162 (W.D. Mich. Aug. 12, 2021); *Jackson v. Dove*, No. 2:21-cv-53 (W.D. Mich. Mar. 29, 2021); *Jackson v. Kemp*, No. 2:21-cv-33 (W.D. Mich. Mar. 3, 2021); *Jackson v. McKee*, No. 2:21-cv-23 (W.D. Mich. Mar. 1, 2021); *Jackson v. Pynnonen*, No. 2:21-cv-26 (W.D. Mich. Feb. 17, 2021); *Jackson v. Taskila*, No. 2:20-cv-38 (W.D. Mich. Apr. 8, 2020); *Jackson v. Berean*, No. 1:19-cv-380 (W.D. Mich. Sept. 27, 2019).

As explained below, in this action, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488,

> 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf.* [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues AMF Warden Terry Wilkins, AMF Deputy Warden Chester Dums, AMF Assistant Deputy Warden Marsha Nurkala, and MDOC Deputy Director Cindy Dodds-Dugan.

Plaintiff claims that Defendants[2] have interfered with his access to the courts and retaliated against him. Plaintiff's complaint alleges that to dissuade him from pursuing his civil rights claims,

---

[2] In Plaintiff's complaint and motion, he describes the actions of several non-parties at AMF who are not named in the title of his complaint. (*See generally* Compl., ECF No. 1.) Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*,

Defendants authorized his placement in certain AMF units with excessive smoke. (*See* Compl., ECF No. 1, PageID.14–20.) First, Plaintiff alleges that he was placed in a "Unit 2 segregation observation cell" from December 18, 2025, through January 9, 2026. (*Id.*, PageID.15, 17.) While there, he was "forced to live with very toxic K2 smoke and strong fumes related to [a fire]." (*Id.*, PageID.17.) Then, Plaintiff was transferred to AMF Unit 6 on January 9, 2026, and alleges that "[t]he K2 smoke in Unit 6 is so prevalent and pervasive that Unit 6 prison staff must turn on industrial fans . . ." (*Id.*, PageID.20.) In both locations, Plaintiff alleges that he suffered and "continue[s] to suffer difficulties breathing, coughing up blood, bloody nose, sore throat, painful eye irritation, headache, malfunction and interrupted heart function, hallucinations, behavior problems, and addiction to secondhand K2 smoke." (*See id.*, PageID.17, 21.)

On April 13, 2026, Plaintiff filed a motion for an order for speedy trial, asserting additional allegations against Defendants Wilkins, Dums, Nurkala, and Dodds-Dugan.[3] (ECF No. 7.) Although Plaintiff has not requested leave to supplement his complaint with the additional allegations in his motion, even if the Court considered Plaintiff's allegations in his motion as supplementing his complaint, as explained below, Plaintiff fails to show that he was in imminent danger of a serious physical injury.

In Plaintiff's motion, he alleges that as of March 20, 2026, he is in "Segregation Unit 2" after being transferred there by Defendants Wilkins and Murkala, and there is "a very toxic K2

No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Accordingly, the Court will address only allegations attributed to the named Defendants in this action; allegations attributed by Plaintiff to non-party individuals will not be addressed by the Court.

smoke environment 24 hours each day." (ECF No. 7, PageID.100.) Plaintiff asserts there were "fires which produce[d] very harmful toxic fumes in Unit 2" on December 17, 2026, three days in March 2026, and on April 1, 2026. (*Id.*) On unspecified dates, AMF staff unnecessarily used "a very strong chemical." (*Id.*) He reports the same physical symptoms described above that he experienced in the other units in AMF.[4] (*Id.*)

As detailed below, Plaintiff's allegations regarding his medical conditions and their causes are conclusory and are "described with insufficient facts and detail to establish that he is in danger of imminent physical injury." *Rittner*, 290 F. App'x at 798. The Sixth Circuit has defined "[a] physical injury [a]s 'serious' for purposes of § 1915(g) if it has potentially dangerous consequences such as death or severe bodily harm. Minor harms or fleeting discomfort don't count." *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019). The Court in *Meden* concluded that the prisoner-plaintiff's allegations of "[c]hest pains, muscular restlessness, seizures, vomiting, stomach cramps, and dizziness" did not meet the exception to the PLRA's three-strikes rule. *Id.* However, "amputations and potential[ ] coma or death" may satisfy the exception. *Vandiver*, 727 F.3d at 587. In other circuits, similar lines have been drawn. *See, e.g.*, *Ibrahim v. District of Columbia*, 463 F.3d 3, 6–7 (D.C. Cir. 2006) (finding that the risk of organ damage, organ failure, and death sufficed); *Gibbs v. Cross*, 160 F.3d 962, 965 (3d Cir. 1998) (finding that the risk of "life-threatening . . . disease" from exposure to asbestos sufficed); *Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017) (finding that "temporary breathing struggles" are not serious enough).

Here, although some of Plaintiff's medical conditions might by serious, such as his difficulties breathing, coughing up blood, "malfunction and interrupted heart function," and

[4] In Plaintiff's motion, he also alleges he "blacked out" on April 1, 2026, because Defendants and non-parties ordered the electricity to his cell to be turned off and he was unable to use his CPAP breathing machine on that date. (ECF No. 7, PageID.101.)

blacking out, they do not necessarily indicate imminent physical injury under § 1915(g).[5] Significantly, Plaintiff is speculative as to the cause of his medical conditions and is conclusory as to their type and duration. (Compl., ECF No. 1, PageID.17.; ECF No. 7, PageID.100.) Plaintiff states that he had and continues to have these symptoms, without any variance, for months. (Compl., ECF No. 1, PageID.17, 21; ECF No. 7, PageID.100.) Plaintiff's allegations contain no factual details about the smoke in his unit, such as any dates, individuals involved, or circumstances involving K2 smoke or chemicals used by AMF staff. Similarly, Plaintiff fails to allege any facts regarding the extent or proximity of the fires to Plaintiff's placement in these units. Although Plaintiff provides specific dates for the fires, he only alleges that his medical conditions remain unchanging in their intensity, seemingly regardless of when the fires occurred. (*See id.*) Plaintiff's speculation that the fires and K2 smoke, in undescribed intensity and duration, are responsible for his medical complaints, even months after the fires occurred, do not establish imminent physical danger; it simply establishes Plaintiff's subjective belief that his medical ailments are caused by his living conditions. Even if Plaintiff's allegations indicate he is in need of some medical treatment, notably, Plaintiff's complaint contains no factual allegations regarding any interactions with healthcare staff to receive treatment for his vague medical conditions.[6] Finally, although Plaintiff concludes that his "death is imminent" in these living conditions, he fails to allege any factual basis for his conclusion. (*See id.*, PageID.21.) For all these reasons, the

---

[5] The remainder of Plaintiff's alleged medical conditions, a bloody nose, sore throat, eye irritation, headache, hallucinations, behavior problems, and addiction to second-hand K2 smoke, fail to establish imminent physical injury. *See Vandiver*, 727 F.3d at 585; *Meden*, 938 F.3d at 850.

[6] Plaintiff's only allegation about healthcare is that he notified non-party health care employees, and Defendants Wilkins, Dums, and Nurkala "to transfer [Plaintiff] to a different facility." (Compl., ECF No. 1, PageID.17.)

Court finds that Plaintiff's medical complaints do not indicate that he is in danger of imminent physical injury.

Moreover, Plaintiff fails to allege that the named Defendants were directly involved in the creation of those conditions or have disregarded the risk of Plaintiff's health with his placement in those conditions. Therefore, Plaintiff has failed to show that he was in imminent danger *from the named Defendants*. *See Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) (holding that there must be some nexus between the imminent danger alleged by the prisoner and the legal claims asserted in his complaint). As detailed below, Plaintiff's allegations regarding the named Defendants are entirely conclusory or are extrapolated from threats made to Plaintiff by non-party AMF staff. Plaintiff's allegations that Defendants Wilkins, Dums, and Nurkala were responsible for transferring Plaintiff to these smoky units to specifically cause Plaintiff harm are all relayed to Plaintiff through non-parties. (*See id.*, PageID.12, 13, 14, 20). For example, Plaintiff alleges that a non-party AMF staff person came to his cell and said, "Nurkala, Deputy Dums[,] and Warden Wilkins told me to make sure that you are placed in the most violent [general population] unit that has the strongest and most K2 smell and smoke." (*Id.*, PageID.20.) Another allegation has a non-party telling Plaintiff, "We're going to kill you with K2." (*Id.*, PageID.13.) Nearly all of Plaintiff's allegations follow the same form, where the Defendants do not make any direct threats to Plaintiff, but non-parties threaten Plaintiff and relay statements allegedly made by Defendants. (*See generally* Compl., ECF No. 1.) Any allegations involving direct actions taken by the Defendants are simply that the Defendants authorized Plaintiff's transfer to units within AMF, and Defendants "*knew* that [Plaintiff] ha[s] breathing difficulty," were "*aware* that there was a fire in Unit 2," and were "*aware* that K2 can cause death." (*Id.*, PageID.18; *see also id.*, PageID.32–35 (emphasis added).) Plaintiff's conclusory statements that Defendants have knowledge and intend to cause

him harm are based on non-party statements, and Plaintiff alleges no *facts* from which to reasonably infer that Defendants themselves are threatening Plaintiff with imminent physical harm.

There are two exceptions in Plaintiff's filings to the Court's discussion above, both relating to allegations against Defendant Nurkala. First, Plaintiff alleges that on December 30, 2025, while in an observation cell, Defendant Nurkala told Plaintiff, "You filed those lawsuits . . . so now this K2 smoke will cause you cancer in the future." (*Id.*, PageID.19.) Second, on March 25, 2026, in Segregation Unit 2, Defendant Nurkala told Plaintiff, "We placed you here so that your old a[**] can die from asphyxiation." (ECF No. 7, PageID.100.)

For the reasons set forth below, the Court concludes that Plaintiff has failed to allege facts against Defendant Nurkala which support a finding that he was in imminent danger at the time he filed this lawsuit. Plaintiff's allegations "'must be sufficient to allow a court to draw reasonable inferences' that the threat is 'real and proximate' and that the 'danger of serious physical injury' exists." *Jackson v. Bolton*, No. 23-1701, 2024 WL 314530 at *2 (6th Cir. Jan. 24, 2024) (quoting *Vandiver*, 727 F.3d at 585). Here, Plaintiff's allegations against Defendant Nurkala, in sum, claim that she knows there is a risk of harm to Plaintiff in these specific AMF units and she is disregarding the risk. However, Plaintiff fails to allege any facts to indicate that he has complained of or informed any Defendant, much less Defendant Nurkala, of his medical conditions. Plaintiff alleges he has sent "numerous request[s]" to Defendants Wilkins, Dums, and Nurkala to "transfer [Plaintiff] to a different facility without a pervasive K2 environment," but provides no details regarding what he specifically told Defendants, Defendants' responses, or the dates or context for any of his "requests." Aside from Plaintiff's two alleged and isolated statements by Defendant Nurkala, there is nothing in Plaintiff's facts to indicate that Defendant Nurkala is aware of

Plaintiff's medical situation that would indicate that any risk of harm to Plaintiff is not remote and "in the future." (*See* Compl., ECF No. 1, PageID.19.) Moreover, Plaintiff provides no facts to indicate that Defendant Nurkala is responsible for the smoky conditions which, as discussed above, are sparse and lacking in detail and specificity. In short, Plaintiff asks the Court to fabricate plausibility to his claim from mere ambiguity; but ambiguity does not support an inference of real and proximate danger of serious physical injury.

Accordingly, Plaintiff is barred from proceeding *in forma pauperis* under § 1915(g). Plaintiff also has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*. The Court will therefore dismiss this action without prejudice. *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g)."). Plaintiff is free to refile his complaint as a new action in this Court if he submits the filing fees at the time that he initiates the new action.

Additionally, Plaintiff filed a motion for an order for a speedy trial on April 13, 2026. (ECF No. 7.) Because the Court will dismiss this action, as detailed in this opinion, the Court will deny Plaintiff's motion for an order for a speedy trial.

## Conclusion

For the foregoing reasons, the Court will deny Plaintiff leave to proceed *in forma pauperis*. Further, the Court will deny Plaintiff's motion for an order for a speedy trial (ECF No. 7). The

Court will dismiss this action without prejudice to Plaintiff's right to refile his complaint as a new action in this Court with the full civil action filing fees.[7]

For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Further, should Plaintiff appeal this decision, he must pay the $605.00 appellate filing fee in a lump sum, because he is prohibited from proceeding *in forma pauperis* on appeal by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated: September 30, 2026

/s/ Robert J. Jonker
Robert J. Jonker
United States District Judge

[7] Because Plaintiff has the opportunity to refile his complaint as a new action in this Court by paying the full civil action filing fees at the time of filing the new action, the Court will not assess the district court filing fees in the present action.